UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| THOMAS WILKES, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br>v.<br><br>THE HANOVER INSURANCE GROUP, INC, a Massachusetts corporation,<br><br>    Defendant.<br>_____ | CASE NO.:<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT FOR DAMAGES**

Plaintiff Thomas Wilkes, on behalf of himself and all others similarly situated, files this Class Action Complaint against The Hanover Insurance Group, Inc. ("Hanover" or "Defendant") and in support thereof states the following:

**NATURE OF THE ACTION**

1. This is a class action lawsuit by Plaintiff Thomas Wilkes, who was a named insured under an automobile policy issued by Defendant, providing coverage for physical damage to the insured vehicle and requiring Defendant to make payment after a "total" loss of an insured vehicle either by replacing the vehicle or paying the cost to do so in money.

2. This lawsuit is brought by Plaintiff on behalf of himself and all other similarly situated insureds who have been injured by or suffered damages due to Defendant's practice of refusing to pay its insureds for certain mandatory costs and fees that are necessary to replace the insured vehicle when the vehicle is declared to be a total loss. Upon information and belief, Defendant systematically underpaid not just Plaintiff's claim but thousands of other putative Class

Members' claims seeking payment of a total loss by failing to include title and registration transfer fees ("Transfer Fees") in making payment for the total-loss.

3. The failure pay mandatory and unavoidable Transfer Fees to first-party total losses owed to the insureds pursuant to the policy language constitutes a breach of the policy and is part of Defendant's uniform and consistent practice of attempting to unlawfully retain a portion of the amount owed to its insureds to the tune of millions of dollars, with the hope that the underpayment is small enough to escape notice or discourage the time and energy of litigation. Having discerned Defendant's consistent practice of breaching its contract with every insured who suffers a total loss, Plaintiff brings this action to protect the class members and to recover the money that is rightfully owed to them pursuant to their policies.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 because the parties are diverse and the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, as required by the Class Action Fairness Act ("CAFA").

5. Venue is proper in this Court because a substantial portion of the acts and course of conduct giving rise to the claims alleged occurred within the Western District of Michigan and Defendant is subject to personal jurisdiction in this district.

## THE PARTIES

6. At all times material hereto, Plaintiff Thomas Wilkes was a citizen of the State of Michigan, being domiciled in Cedar Springs (Kent County), Michigan.

7. At all times material hereto, Defendant was a Delaware corporation, which had its principal place of business in Worcester, Massachusetts and was authorized to transact business in the State of Michigan.

## THE INSURANCE POLICY

8. The relevant insurance policy language is materially identical for both Plaintiff and all putative class members. Defendant utilizes the same policy forms and applicable policy language.

9. The personal auto insurance policy (the "Policy) issued to Plaintiff by Defendant is attached hereto as **Exhibit A**.

10. The insured vehicle, which the policy refers to as "Your covered auto," is defined in the policy's PROPERTY PROTECTION COVERAGE ENDORSEMENT (Form 231-2207 08 17) as an auto (1) which you own; (2) for which you are required to maintain security under the Michigan Insurance Code; and (3) to which the property damage liability coverage of this policy applies." *See Ex. A*, Property Protection Coverage Endorsement (Form 231-2207 08 17) at pg. 1 of 2.

11. The Policy promises to pay for direct and accidental loss to the insured vehicle caused by "Collision" or a non-excluded event that falls under the Other Than Collision Coverage, which is similar to comprehensive coverage. *See Ex. A.,* pg. 6 of 12.

12. When a loss occurs, the Policy's Payment for Loss provision reserves to Defendant the right to pay for the loss by electing either to repair or replace the damaged property or by paying the cost to do so in money. *Id.* at pg. 8 of 12 (Payment for Loss provision).

13. Defendant's liability for such loss, however, is not limitless. Instead, under PART D, LIMIT OF LIABILITY, the policy states that Defendant's "limit of liability for loss will be the

lesser of the (1) actual cash value of the damaged property; or (2) amount necessary to repair or replace the property with other property of like king and quality. *See Exh. A, pg. 8 of 12.*

14. A total loss occurs where Defendant determines that the cost to repair the damage plus the value of the vehicle after the loss (salvage value) exceeds the actual cash value of the vehicle. For instance, if the cost to repair a vehicle is $15,000 and its salvage value is $3,000 and the cost to replace the vehicle with a substantially similar or identical vehicle is $17,000, then Defendant would declare the vehicle to be a total loss because the cost to Defendant would be $14,000 ($17,000 to replace but recovering $3,000 by selling the salvage vehicle) rather than the $15,000 it would have to pay to repair the vehicle.

15. While ACV is not a defined term, the Policy explains it "will include an adjustment for depreciation and physical condition[.]" *Id.*

16. This comports with Michigan law, which, in the context of personal property insurance (as opposed to real property insurance), defines the ACV of an item as its replacement costs minus depreciation. *Smith v. Michigan Basic Ins. Co.*, 441 Mich. 181, 196 n.28 (Mich. 1992).

17. Notably, the Policy does not include any provision that: (1) excludes mandatory title fees and registration transfer fees from the vehicle's ACV; (2) defers payment of mandatory replacement costs, including Transfer Fees, for any purpose whatsoever; or (3) requires an insured to obtain a replacement vehicle in order to receive payment for every type of monetary loss provided for in a particular coverage provision.

18. Moreover, the Policy applies equally to all covered autos irrespective of ownership interests. The Policy makes no distinction between owned, financed, or leased vehicles, but rather, it defines and treats all vehicles – owned, financed, or leased – identified in the Declarations page in precisely the same

## ALLEGATIONS SPECIFIC TO PLAINTIFF'S CLAIM

19. Defendant's standardized policy language as to the payment of ACV for a vehicle considered a total loss under collision or comprehensive coverage is present in every auto policy issued by Defendant in Michigan.

20. The policy language used in automobile insurance policies issued by The Hanover Insurance Group is standardized in all relevant and material ways.

21. At all times material hereto, Plaintiff insured a 2012 Chrysler Town & Country Minivan under a Personal Auto Policy issued by Defendant, bearing policy number 82-A6I-D112209, with effective dates of December 5, 2017 to December 5, 2018. *See Ex. A*, Declarations Page.

22. On or about November 30, 2018, Plaintiff's vehicle was involved in a collision with another motor vehicle, resulting in significant physical damage to his 2012 Chrysler Town & Country. As a result of said accident, Plaintiff filed a claim with Defendant, which was assigned claim number 19-00-342797-1-1.

23. Following the filing of said claim, Defendant determined – based on its calculation of the damage to the vehicle, the cost to repair, the cost to replace, and the salvage value – that the loss constituted a complete or total loss. Plaintiff is unaware of what such calculations were and does not challenge the fact that, whatever the basis utilized, the amount was sufficient to constitute a total loss.

24. Defendant determined that the vehicle had a base value of $9,672.00 and an adjusted value of $9,271.00. *See* **Exhibit B** (Market Valuation Report) at pg. 1.

25. The base value and adjusted value were calculated by a third-party vendor on Defendant's behalf. Defendant determines the base value of an insured vehicle by evaluating the

listed sale price prior to imposition of sales tax and mandatory title and registration fees of an identical vehicle – in Plaintiff's case, a 2012 Chrysler Town & Country – in the relevant market, while also taking into account mileage and condition of the insured vehicle. After applying an automatic condition adjustment in determining the base value – under the assumption that insured vehicles are in average condition – Defendant applies upward or downward adjustments to the base value, which account for the actual condition of the vehicle and other factors, such as prior damage or installation of custom or aftermarket parts, which form of the basis of the adjusted value.

26. Plaintiff does not challenge Defendant's determination of the underlying adjusted value of the vehicle.

27. However, there was no amount provided for mandatory title fees and registration fees in Defendant's adjusted vehicle value of $9,271.00, even though the Market Valuation Report relied on by Defendant indicates that certain fees may be "taken into account" before Defendant determines the total settlement amount. *See Ex. B* (Market Valuation Report) at pg. 1 of 9 ("The total may not represent the total of the settlement as other factors (e.g. license and fees) may need to be taken into account.").

28. Ultimately, Defendant issued a total loss settlement payment to Plaintiff that did not include any amount for payment of Transfer Fees.

29. Defendant's failure to include title transfer fees and registration transfer fees – both of which are mandatory costs to replace a vehicle, and are attributable neither to depreciation nor to physical condition – in Plaintiff's total loss settlement constituted a breach of the policy.

**PAYMENT OF TITLE AND REGISTRATION TRANSFER FEES**

30. Michigan law is clear that courts cannot limit the scope of a term, if it is not defined in the policy, to a narrow definition that benefits the insurer; in fact, if policy language is susceptible to more than one reasonable interpretation, it is construed in the light that would grant coverage, i.e. to the benefit of the insured and against the insurer. *State Farm Mut. Auto Ins. Co. v. Enterprise Leasing Co.*, 549 N.W.2d 345, 351 (Mich. 1996). Only if an insured's interpretation is unreasonable is a policy construed favorably to the insurer; if the insured's interpretation is at least reasonable, then the policy is (at minimum) ambiguous and construed in favor of the insured. *Allstate Ins. Co. v. Vaughan*, 2006 Mich. App. LEXIS 3262, at *2 (Mich. App. Oct. 31, 2006).

31. Michigan law holds that included in the costs to replace damaged property are costs reasonably likely to be incurred in replacement. *Salesin v. State Farm,* 229 Mich. App. 346, 367-68 (Mich. Ct. App. 1998) (holding ACV policy includes replacement costs reasonably likely to be incurred, less depreciation).

32. The ACV of personal property is its replacement costs minus depreciation. *Smith v. Michigan Basic Ins. Co.*, 441 Mich. 181, 196 n. 28 (Mich. 1992).

33. Title transfer fees and registration transfer fees are mandatory applicable fees that must be paid to replace any vehicle in the State of Michigan and are thus reasonably likely to be incurred.

34. In fact, it is a crime to operate or allow to be operated a vehicle on the roads in Michigan "for which a certificate of title has not been applied for or for which the appropriate fee has not been paid." *See* Mich. Veh. Code § 257.215.

35. The requirement applies to "every motor vehicle" other than when certain exceptions apply, which are not relevant here. *See* Mich. Veh. Code § 257.216.

36. Michigan law forbids issuance of a transfer of title or registration if the applicable fees have not been paid. *See* Mich. Veh. Code § 257.219.

37. The total fee for transfer of title in Michigan is $15.00. *See* Mich. Veh. Code § 257.810(a)(total fees amount to $14.50) and § 257.806 (an additional fee of $0.50).

38. The registration transfer fee in Michigan, applicable to every insured that replaces a vehicle declared a total loss is $8.00. *See* Mich. Veh. Code § 257.809.

39. Because Defendant promises to pay ACV, which includes the costs reasonably likely to be incurred upon replacement, it must include the title transfer fee of $15.00 and the registration transfer fee of $8.00, both of which are necessary to achieve indemnity, or the insured's pre-loss position.

40. Accordingly, individuals insured by Defendant, including Plaintiff, are owed the adjusted vehicle value as determined by Defendant (which Plaintiff does not challenge), plus sales tax (which Defendant paid in this instance) plus title transfer fees of $15.00 and registration transfer fees of $8.00, less any applicable deductible and any applicable salvage retained value.

41. In breach of the express terms of Plaintiff's policy, Defendant did not pay Transfer Fees as part of the total loss settlement.

42. Plaintiff paid all premiums owed under the policy and satisfied all conditions precedent such that Plaintiff's insurance policy was in full force and effect on the date of the collision.

43. By making the total loss payment to Plaintiff—although in an inadequate amount—Defendant acknowledged that the claim was a covered total-loss and that Plaintiff satisfied all conditions precedent and duties after loss necessary for payment of the claim.

## CLASS ALLEGATIONS

44. Plaintiff bring this action respectively seeking representation of a class pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3).

45. Defendant's business practices for determining and issuing payment for vehicles consider a total-loss claims are uniform. Defendant's procedures and business practices are such that every member of the Class, as defined below, was not paid the Transfer Fees owed under the policy and, in addition, upon information and belief, some of the members of the Hanover Insurance Group Class were not paid sales tax.

46. Plaintiff brings this action as class representative, individually and on behalf of all other persons or entities similarly situated, more specifically defined as follows:

### THE HANOVER INSURANCE GROUP CLASS

> All insureds, under any Michigan policy issued by The Hanover Insurance Group covering a vehicle with physical damage coverage, who submitted a first-party claim to Defendant ultimately determined to be a covered total loss claim during the six years preceding the filing of this lawsuit and running through the date of any certification order.

47. **Numerosity**: Although the precise number of class members are unknown to Plaintiff at this time, and can only be determined through discovery, Plaintiff believes that because Defendant is one of the largest motor vehicle insurers in the State of Michigan and underwrites hundreds of millions of dollars in physical damage coverage premiums, the total number of persons affected by Defendant's unlawful practices numbers in the thousands of individuals, or that the class of affected persons is otherwise so numerous that joinder of all class members in one lawsuit is impractical. The unlawful practice alleged herein is a standardized and uniform practice, employed by Defendant pursuant to standardized insurance policy language and settlement practices, and results in Defendant's unlawful retention of insurance policy benefits that are owed

to Plaintiff and the Class Members. Thus, numerosity within the meaning of Rule 23(a)(1) is established.

48. **Commonality**: Plaintiff's claims raise questions of law and fact common to all members of the class that predominate over any individual questions, within the meaning of Fed. R. Civ. P. 23(a)(2) and (b)(3). Said common questions include, but are not limited to, the following: (a) whether Defendant are permitted to exclude or limit from coverage the Transfer Fees necessary to replace a vehicle imposed by the State of Michigan; (b) whether Transfer Fees are reasonably likely to be incurred in replacing a vehicle in the State of Michigan; and (c) whether Defendant breached its insurance contracts with Plaintiff and the members of the Class by failing to including Transfer Fees in making ACV payment for total-loss vehicles.

49. The central issues in this litigation turn on interpretation of materially identical policy provisions; Defendant and all members of the Class are bound by the same materially identical policy terms. Resolution of the question of policy-interpretation will not only advance the litigation but will in fact substantially resolve it. Individual questions – such as the underlying value of the vehicles and the amount of the original total-loss payment – are not disputed issues and do not require litigation. Issues requiring litigation relate to Defendant' uniform practices, procedures and uniform Policies, for instance, along with potential expert testimony and application of Michigan statutory requirements applicable equally to all members of the Class and thus common to them.

50. **Typicality**: Plaintiff's claims are typical to those of all class members, within the meaning of Rule 23(a)(3), because members of the Class are similarly affected by Defendant's uniform failure to make FTLP upon the submission of a claim for total loss of the insured vehicles.

The material and relevant policy terms for each class member are substantially identical to the terms of Plaintiff's policy.

51. Plaintiff's interests are coincident with and not antagonistic to those of other class members, nor is the Plaintiff's subject to any unique defenses sufficient to preclude a finding of typicality. Plaintiff asserts the same claim based upon the same theory and subject to the same affirmative defenses, meritorious or not, within the meaning of Rule 23(a)(3).

52. **Adequacy**: Plaintiff and his counsel will fairly and adequately protect and represent the interests of each member of the class within the meaning of Federal Rule of Civil Procedure 23. Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in prosecuting and defending class actions. Plaintiff's counsel has successfully litigated class action cases containing allegations similar to those alleged here, where insurers breached contracts with their insureds by failing to include payment for mandatory transfer fees after total losses. Neither Plaintiff nor his counsel have interests in conflict with those of the Class Members within the meaning of Rule 23(a)(4).

53. **Superiority**: a class action is "superior to other available methods of adjudication in promoting the convenient administration of justice." Because the case turns on the central and predominate question of interpretation of materially identical policy provisions, inconsistent or varying interpretations interpose incompatible standards of conduct. On the other hand, an adjudication of an individual class member's claim, which is virtually identical to all others, would substantially impede or impair any other class member's claim. Thus, it is desirable to concentrate the litigation of the Class Member's claims in one forum, as it will conserve party and judicial resources and facilitate the consistency of adjudications.

54. Moreover, because the damages suffered by individual Class Members are relatively small, their interests in maintaining separate actions is questionable and the expense and burden of individual litigation makes it impracticable for Class Members to seek individual redress for the wrongs done to them. Plaintiff knows of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class action.

55. The issues related to Plaintiff's claims do not materially differ from the issues relating to the claims of the Class such that a class action provides a more efficient vehicle to resolve this claim than through a myriad of separate lawsuits.

**COUNT I: BREACH OF CONTRACT AGAINST DEFENDANT**

56. Plaintiff re-alleges and incorporates the previous paragraphs as if fully set forth herein.

57. This count is brought by Plaintiff Thomas Wilkes, individually and on behalf of the Class.

58. Plaintiff was party to an insurance contract with Defendant, as described herein. All Class Members were insured under an automobile policy issued by Defendant containing materially identical terms.

59. The interpretation of Plaintiff's and all Class Members' insurance Policies are governed by Michigan law.

60. Plaintiff and all of the Class Members submitted first-party claims to Defendant for damage to their vehicle, which was subsequently determined by Defendant to be a covered total-loss claim.

61. Defendant, by paying the total loss claim, although in insufficient amounts, necessarily determined that Plaintiff and each Class Member complied with the terms of their

insurance contracts, and fulfilled all post-loss obligations and conditions precedent thereby entitling them to payment under their policy for a total loss.

62. Pursuant to the uniform contractual provisions, once the insured vehicle is determined to be a total loss, Plaintiff and every other Class Member were owed the adjusted underlying value, as calculated by Defendant, along with sales tax and Transfer Fees, less any applicable deductible and salvage-retention (FTLP).

63. By failing to include Transfer Fees in making payment to its insureds, Defendant did not properly pay the ACV owed to Plaintiff and every Class Member.

64. Defendant's failure constitutes a material breach of the policies issued to Plaintiff and the members of the Class.

65. As a result of said breaches, Plaintiff and the Class Members are entitled to payment for Transfer Fees, as well as attorneys' fees, costs, prejudgment and postjudgment interest, declaratory relief and other relief as appropriate.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Thomas Wilkes, individually, and on behalf of the similarly situated Class Members, demands a trial by jury on all triable as a matter of right, and prays for relief and judgment as follows:

- For an Order certifying this action as a Class Action on behalf of the Class described above, and appointing Plaintiff as Class Representative and the undersigned as Class Counsel;
- For an award of compensatory damages in amounts owed under the Policies;
- For declaratory or other equitable relief as is proven appropriate in this matter;
- For all other damages according to proof;

- For attorneys' fees and costs of suit incurred herein;

- For pre and post judgment interests on any amounts awarded;

- For other and further forms of relief as this Court deems just and proper.

Dated: April 27, 2020

                        Respectfully submitted,

By: /s/ Nick Suciu III
Nick Suciu III (P72052)
Barbat, Mansour, Suciu & Tomina PLLC
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
313.303.3472
nicksuciu@bmslawyers.com

By: /s/ Jake Phillips
Jacob L. Phillips
FBN: 0120130
By: /s/ Ed. Normand
Edmund A. Normand
FBN: 865590
Normand PLLC
3165 McCrory Place, Ste. 175
Orlando, FL 32803
407.603.6031
service@ednormand.com
ed@ednormand.com
jacob.phillips@normandpllc.com


By: /s/ Andrew J. Shamis
Andrew Shamis
FBN: 101754
Shamis & Gentile, P.A.
14 N.E 1st Ave Ste. 1205
Miami, FL 33132
305-479-2299
ashamis@shamisgentile.com

By: /s/ Scott Edelsberg
FBN 100537
Edelsberg Law, P.A.
19495 Biscayne Blvd. #607

Aventura, FL 33180
Telephone: 305-975-3320
Scott@edelsberglaw.com